UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Raymond Price,**

    **Plaintiff,**                                      Case No. 2:18-cv-949

    v.                                       Judge Sarah D. Morrison
                                           Magistrate Judge Chelsey M. Vascura

**United States of America,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the United States of America's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction. (ECF No. 27.) Plaintiff filed a Memorandum in Opposition to the Motion (ECF No. 28), and Defendant filed a Reply (ECF No. 29). The matter is now ripe for decision.

**I.    BACKGROUND**

The United States has filed a motion to dismiss for lack of subject matter jurisdiction, mounting both a facial attack and a factual attack. (U.S. Mot. Dismiss, ECF No. 27, at 3–4.) As a result, all facts alleged in the Amended Complaint are assumed to be true, unless proven otherwise by the evidence that the United States has proffered. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Plaintiff Raymond Price, a veteran, is a patient of the Department of Veterans Affairs Medical Center in Belmont County, Ohio ("VA-Belmont"). (Amended Compl., ECF No. 25 ¶ 35.) The VA-Belmont is a part of the VA-Pittsburgh Health System ("VAPHS"), a health care system within the VA. (*Id.* ¶¶ 2–3.) On March 29, 2015, the VA entered into a contract with Ambulatory Care Solutions, LLC ("ACS"), to provide primary care services at the VA-Belmont

1

(the "Contract"). (U.S. Mot. Dismiss Ex. A, ECF No. 27-1, at 1, 9–10.) ACS was the service provider at the VA-Belmont during the relevant time period.[1] (U.S. Mot. Dismiss Ex. B, ECF No. 27-2, at 1.)

Pursuant to the Contract, ACS was responsible for "comply[ing] with all relevant VA policies and procedures, including those related to quality, patient safety and performance . . . ." (ECF No. 27-1, at 7.) These policies and procedures included VHA Directive 2009-019 and VHA Directive 1088 (collectively, the "Directives"), which govern the transmission of results for diagnostic tests at VA clinics. (Amended Compl. Exs. 2, 4, ECF Nos. 25-2, 25-4).

On October 2, 2015, Mr. Price had a blood test at the VA-Belmont. (ECF No. 25, ¶¶ 37, 40, 43.) Among the laboratory tests run on Mr. Price's blood was a test to check his Prostate-Specific Antigen ("PSA") levels. (*Id.* ¶¶ 37, 44.) PSA is a protein produced by the prostate, and elevated levels of PSA (above four ng/ml) indicate a risk of prostate cancer. (*Id.* ¶ 37.) Mr. Price left the VA-Belmont without receiving the results of his PSA test. (*Id.* ¶ 42.)

After his blood draw at the VA-Belmont, Mr. Price's blood was sent to the laboratory at VAPHS for testing. (*Id.* ¶ 43.) The employees at the VAPHS laboratory are federal employees. (*Id.* ¶ 97; U.S. Reply to Mot. Dismiss, ECF No. 29, at 6.) VAPHS completed the PSA test later that same day and, at some point, notated in Mr. Price's medical record that he had an elevated PSA level of 61.98 ng/ml. (ECF No. 25, ¶¶ 42, 44.)

On October 9, 2015, VAPHS sent Mr. Price's October 2, 2015, blood test results to Dr. Daniel Jones, Mr. Price's regular primary care provider, who works outside of the VA system.

---

[1] Defendant ACS insists that Ambulatory Care Solutions of Ohio, LLC, was actually the service provider at VA-Belmont. (Def. Ambulatory Care Solutions Mot. Summ. J., ECF No. 31, at 2.) The Court need not wade into this dispute at this time but assumes that ACS, as the party to the Contract, was indeed the service provider.

(*Id.* ¶ 48; Amended Compl. Ex. 5, ECF No. 25-5.) This transmission did not include the results of the PSA test. (ECF No. 25 ¶ 49.)

Over one year later, on October 28, 2016, Mr. Price had another PSA test. (*Id.* ¶ 54.) This test showed that Mr. Price's PSA level had further increased to 145.36. (*Id.*) On November 16, 2016, Mr. Price visited the VA-Belmont where he learned for the first time that his PSA levels were elevated. (*Id.* ¶¶ 55, 58.)

Shortly after Mr. Price learned this information, he sought treatment from an oncologist, Dr. Gregory Merrick. (*Id.* ¶ 60.) Dr. Merrick diagnosed Mr. Price with advanced prostate cancer. (*Id.*) According to Dr. Russell Pachynski, another oncologist, Mr. Price's prostate cancer "progress[ed] and spread to a substantial and significant degree" between the time of the October 2, 2015, PSA test and the October 28, 2016, test. (Amended Compl. Ex. 7, ECF No. 25-7 ¶ 6.)

On November 15, 2017, Mr. Price submitted an administrative claim of medical malpractice to the VA. (ECF No. 27, ¶ 66.) On June 13, 2018, the VA denied Mr. Price's claim on the grounds that the relevant VA-Belmont employees were contract employees, precluding liability for the United States. (ECF No. 27-2.) On August 23, 2018, Mr. Price filed a Complaint against the United States and against ACS. (Compl., ECF No. 1.) On March 7, 2019, Mr. Price filed an Amended Complaint. (ECF No. 25.) All three Counts of the Amended Complaint plead allegations of negligence, against ACS in Count One and against the United States, on behalf of the VA-Belmont, in Count Two and, on behalf of VAPHS, in Count Three. (*Id.* at 21–28.) The United States has not filed an Answer and has instead moved to dismiss Counts Two and Three for lack of subject matter jurisdiction on the grounds of sovereign immunity. (ECF No. 27.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *Ritchie*, 15 F.3d at 598. A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading[,]" and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (internal quotation marks omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). A factual attack is a challenge to the factual existence of subject matter jurisdiction, in which case no presumptive truthfulness applies to the factual allegations. *Ritchie*, 15 F.3d at 598. In the context of a factual attack, a reviewing court may weigh the evidence in order to satisfy itself as to the existence of its power to hear the case. *Id.*

When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## III. ANALYSIS

The United States has filed a Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction on the grounds of sovereign immunity. In support of this argument, the United States has mounted both a facial and factual attack.

### A. Count Two

The United States, as sovereign, is by default immune from suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). In some circumstances, it has waived its immunity and has consented to be sued. But statutory waivers must be "unequivocally expressed" and must clearly demonstrate congressional intent to waive sovereign immunity. *Id.* (internal quotation marks omitted).

The United States has waived its sovereign immunity to tort suits via the Federal Tort Claims Act ("FTCA"), although this waiver is subject to various exceptions. *Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641, 645 (6th Cir. 2015). One such exception is for contractors. The FTCA only allows for liability for torts caused by "[e]mployee[s] of the Government," who are defined, as relevant here, as working for a "federal agency." *Logue v. United States*, 412 U.S. 521, 525–26 (1973); *accord* 28 U.S.C. § 2671. The definition specifically excludes contract employees. *Logue*, 412 U.S. at 526; *accord* 28 U.S.C. § 2671. In essence, the FTCA adopted the vicarious liability rules of the common law, that an employer is liable for the negligent acts of its employees but not those of its contractors. *Logue*, 412 U.S. at 526–27. As with all waivers of sovereign immunity, this exception must be given "due regard." *United States v. Orleans*, 425 U.S. 807, 814 (1976).

The United States' argument that the FTCA does not establish a cause of action for the negligence claim in Count Two is as follows: The employees at the VA-Belmont were contract employees and not "[e]mployee[s] of the Government." (ECF No. 27, at 5.) Because they are not "[e]mployee[s] of the Government," there is no waiver of sovereign immunity under the FTCA.

Mr. Price argues in response that the VA (a "federal agency") exercised such substantial control over the VA-Belmont that the employees at the VA-Belmont were, for all intents and

5

purposes, federal employees. (Resp. to Mot. Dismiss ECF No. 28, at 20.) This argument is not persuasive.

The Contract outlines each party's responsibilities. Notably, the Contract specifies that while "[t]he Government may evaluate the quality of professional and administrative services provided," it "retains no control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment)." (ECF No. 27-1 ¶ B.2.45.) The Contract further states that "[c]ontractor employees are not covered by the Federal Tort Claims Act[,]" *id.* ¶ B.2.45.7, language that would be complete surplusage if the Contract were not designed to set up a contractor/contract employee relationship.

Mr. Price tries to avoid the language of the contract by arguing that these "two paragraphs should [not] eviscerate the balance of the undisputed evidence of the United States' control over" ACS. (ECF No. 28, at 20.) However, contracts are governed by their language. *Dottore v. Huntington Nat'l Bank*, 480 F. App'x 351, 352 (6th Cir. 2012) ("[T]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." (quoting *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987))); *Moser v. United States*, No. 1:02-CV-302, 2006 WL 1476202, at *7 (S.D. Ohio May 25, 2006) (finding that VA contract expressly intended to create an independent contractor relationship). The Contract is clear that the United States and ACS established a contractor/contract employee relationship.

The Government argues that this is the end of the inquiry. Mr. Price, however, argues that the contractual language is inconsistent regarding the amount of control that the United States can exert over ACS. (ECF No. 28, at 21–24.) In making this argument, Mr. Price highlights all of the obligations that the VA requires of ACS in the Contract. (*Id.* at 11-12.) He also points out

6

that the VA has the right to audit—and has in fact audited—the VA-Belmont. (*Id.* at 13-14.) Mr. Price then uses these contractual provisions to argue that the Government exercised such pervasive control over ACS that ACS employees should be considered to be "[e]mployee[s] of the Government" for purposes of the FTCA.

It is not surprising that the Government wishes to hold its contractors on a tight leash, and it is permitted to do so. The Government has a right to hold its contractors to exacting standards and to ensure the quality of those with which it does business. *Orleans*, 425 U.S. at 816. However, such standards do not alter the character of the business relationship. *Id.*

The requirements here are analogous to those in *Logue*, where the Government mandated standards of treatment for federal prisoners in the county jail with which it contracted, "including methods of discipline, rules for communicating with attorneys, visitation privileges, mail, medical services, and employment." 412 U.S. at 529–30. The Government also had the right to enter the jail to inspect its conditions and to monitor contract compliance. *Id.* at 530. What the *Logue* Court found most important, however, was that the Government had "no authority to physically supervise the conduct of the jail's employees[.]" *Id.* That is the key. "[E]mployees of a contract with the Government[] whose physical performance is not subject to governmental supervision" are not considered to be "acting on behalf" of a federal agency and are not encompassed by the FTCA. *Id.* at 531. As a result, the contract workers at the VA-Belmont can only be considered to be "[e]mployee[s] of the Government" under the FTCA if their "physical performance" was "subject to governmental supervision." It was not. That is exactly what Paragraph B.2.45 says: "The Government . . . retains no control over the medical, professional aspects of services rendered . . . ."

Mr. Price argues that the conduct at issue here is not governed by Paragraph B.2.45. He argues that notification of the PSA test results is so ministerial, particularly given the confines of the Directives, that it involves no discretion or professional judgment. That parses the language in Paragraph B.2.45 far too finely. It defies logic to say that reporting blood test results is not part of the "medical, professional aspects of services rendered." The Directives govern many of the aspects of reporting test results, but the requirement that the VA-Belmont employees comply with the Directives is merely a contractual restriction rather than an example of the Government monitoring the VA-Belmont employees' physical performance. A violation of these Directives may be a breach of the Contract, but it does not change the nature of the relationship between the Government and ACS.

Finally, Mr. Price cites four cases to support the argument that contractors can sometimes be "[e]mployee[s] of the Government" under the FTCA. (ECF No. 28, at 22–23.) Two of these cases are out-of-circuit cases from long before the Supreme Court interpreted the FTCA's contractor exception in *Logue* and *Orleans*, so they are entitled to no weight. *See generally Witt v. United States*, 462 F.2d 1261 (2d Cir. 1972); *State of Md., for Use of Pumphrey v. Manor Real Estate & Tr. Co.*, 176 F.2d 414 (4th Cir. 1949). The remaining two are district court opinions involving significantly more governmental intervention than is the case here; in particular, the Government in those cases had the ability to manage individual doctors' schedules and assignments. *See Williams v. United States*, No. 03 Civ. 9909 (GEL), 2007 WL 951382, at *11–*12 (S.D.N.Y. Mar. 22, 2007) (noting that Government approved personnel assignments and controlled doctor's work hours, vacation time, and daily schedule); *Tivoli v. United States*, No. 93-CIV-5817-CLB-MDF, 1996 WL 1056005, at *4–*5 (S.D.N.Y. Sept. 27, 1996), *aff'd,* 164 F.3d 619 (2d Cir. 1998) (finding that Government designated the specific treating physicians

under the contract and controlled their work hours and assignments). There is no evidence that the Government had the ability to do so here, nor has Mr. Price alleged that it did.

While precedent that closely mirrors these facts is thin, the weight of the precedent that does exist is heavily on the Government's side of the argument. *See, e.g.*, *Linkous v. United States*, 142 F.3d 271, 276 (5th Cir. 1998) (finding that factors in Restatement (Second) of Agency tipped in favor of independent contractor status for VA doctor); *Carrillo v. United States*, 5 F.3d 1302, 1304 (9th Cir. 1993) ("The circuits are unanimous in holding that a contract physician is not an employee of the government under the FTCA." (collecting cases)); *Durbin v. United States*, No. 92-6658, 1993 WL 219868, at *1 (6th Cir. June 21, 1993) (per curiam) (affirming district court's dismissal of negligence action brought against VA independent contractor); *Moser*, 2006 WL 1476202, at *7 (finding that VA contract expressly intended to create an independent contractor relationship).

Mr. Price has not met his burden to prove that the Court has subject matter jurisdiction over Count Two. Count Two is, accordingly, dismissed.

### B. Count Three

The Amended Complaint makes a series of allegations against VAPHS, an undisputed "federal agency," based on its role in the alleged failure to transmit the PSA test results. (ECF No. 25, at 26–28.) The Government entirely ignores this claim in its Motion to Dismiss but addresses it in its Reply wherein it argues that VAPHS is not liable for any negligent acts of ACS and that VAPHS had no duty to communicate test results to Mr. Price. (ECF No. 29, at 6–7.)

Mr. Price alleges in Count Three, at least in part, that VAPHS was negligent with regard to its *own* responsibilities based on its role in the PSA testing and based on its supervisory responsibilities over the VA-Belmont and ACS. (*See, e.g.*, ECF No. 25 ¶ 99.) The Court holds

9

that, for the same reasons outlined above, it has no subject matter jurisdiction over any claims of vicarious liability asserted against VAPHS for any negligence by ACS. To the extent that Count Three alleges such vicarious liability, these aspects of the claim are dismissed for lack of subject matter jurisdiction. However, based on the waiver of sovereign immunity in the FTCA, because VAPHS is a "Federal agency" and its employees are "[e]mployee[s] of the Government," the Court does have subject matter jurisdiction over any negligence committed by these individuals. *See* 28 U.S.C. §§ 2671, 2674–75.

As a result, Mr. Price may pursue his claims under Count Three alleging that VAPHS was *itself* negligent either through actions of VAPHS employees surrounding the PSA testing (and the transmission of the test results) or through VAPHS's supervision of the employees at the VA-Belmont, to the extent that it had a responsibility to do so. *See, e.g.*, *Brown v. United States*, 486 F.2d 284, 288–89 (8th Cir. 1983) (finding evidence of federal government's negligence based on its knowledge of inadequate conditions in county jail housing federal inmates); *Rodriguez v. United States*, No. 1:13-CV-01559, 2015 WL 3645716, at *8–11 (N.D. Ohio June 10, 2015) (denying motion to dismiss where there was evidence that federal employees failed to take reasonable measures to address known negligence by a contractor).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** as to Count Two and **GRANTED IN PART** and **DENIED IN PART** as to Count Three. Count Two is **DISMISSED** without prejudice for lack of jurisdiction.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**